UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 2 2 2016
```

United States of America,

        –v–

David Keith,

             Defendant.

15-CR-827 (AJN)

MEMORANDUM AND
ORDER

ALISON J. NATHAN, District Judge:

      Presently before the Court is Defendant David Keith's pre-trial motion to suppress

physical evidence recovered during a search of his home and to exclude evidence of a witness

identification. Dkt. No. 21. For the reasons articulated below, Defendant's motion is DENIED.

## I.     BACKGROUND

      In an Indictment dated November 30, 2015, Defendant is charged with two counts of

sexual exploitation of a child, one count of receipt of child pornography, and one count of

possession of child pornography. Dkt. No. 5. Defendant's motion seeks to exclude evidence

seized pursuant to a November 2015 search warrant issued for the premises at 1535 University

Avenue, Apartment 10F in the Bronx. Defendant also seeks to exclude a witness's December

2015 photo array identification.

      Special Agent John D. Robertson ("Agent Robertson") submitted an application for a

search warrant of Defendant's home to Magistrate Judge Debra Freeman on November 16, 2016.

Dkt. No. 22 Ex. A.[1] The application described law enforcement's investigation of a particular

---

[1] While the cover page of this exhibit appears on the public docket, the remaining pages have been filed under seal.

child pornography website ("Website A"). *Id.* ¶ 17. According to the application, Website A

operated on a network only available to users with particular software to enable anonymous

communication. *Id.* ¶ 17(b). Additionally, Website A required a user to obtain the web address

from another user (rather than locating the site from an internet search engine) and register to

view content. *Id.* ¶ 17(c) & n.3, (d)(ii). On February 18, 2015, a user registered on Website A

with the username "whitekkk." *Id.* ¶ 18(b). From February 18, 2015 to March 4, 2015, that user

was logged into Website A for 22 hours, viewed three posts containing numerous photographs of

child pornography, and downloaded one video of child pornography. *Id.* ¶ 18(b)-(e).

Agent Robertson explained in the warrant application that law enforcement was able to

ascertain that whitekkk accessed at least one of Website A's posts from the IP address

74.89.203.215, which law enforcement determined was operated by Internet Service Provider

("ISP") Optimum Online. *Id.* ¶¶ 19-20. Records from Optimum Online revealed that this IP

address was registered to Anita Wright at 1535 University Avenue, Apartment 10F in the Bronx.

*Id.* ¶ 20. Public records further revealed that Defendant, Wright's son, also resided at this

address. *Id.* ¶¶ 21-22. Although the warrant application included some technical information

about IP addresses and ISPs, *see id.* ¶ 8(m)-(n), the application did not explain that wireless

internet connections may be accessed in certain circumstances from outside the premises where a

router is registered and located. Dkt. No. 22 ("Nooter Aff.") ¶ 7.

Based on the above information, Judge Freeman granted the application for a search

warrant on November 16, 2015, Dkt. No. 22 Ex. A at 1, and law enforcement executed the

warrant the following day. Nooter Aff. ¶ 13. Defendant was present on the premises when the

search warrant was executed. *Id.* Law enforcement officers were able to recover deleted files

from computers seized from Defendant's home, which allegedly included sexually explicit

videos of Defendant with young girls. *Id.* ¶ 14; Dkt. No. 5 ¶¶ 2, 5-6.  Police were able to locate

another girl who had made similar allegations against Defendant but was not depicted in the

videos and presented her with a photo array containing photographs of six individuals.  Nooter

Aff. ¶ 14; *see also* Dkt. No. 30 Ex. A.  This witness identified Defendant in the second

photograph of the photo array.  Nooter Aff. ¶ 14; Dkt. No. 30 Ex. A.

   Defendant now moves to suppress and exclude evidence stemming from the search of his

home and the witness identification.  First, Defendant argues that Agent Robertson's search

warrant application omitted information that, if considered, would undermine Judge Freeman's

probable cause determination.  Second, Defendant argues that the information presented in the

search warrant application was stale.  Finally, Defendant argues that the identification procedures

used by police were unduly suggestive.  The Court will address each of these arguments in turn.

## II.    MISLEADING INFORMATION IN THE SEARCH WARRANT APPLICATION

   Defendant first argues that the search warrant application "contained information that

was either deliberately or recklessly misleading" and was thus invalid.  Br. at 9.  Specifically,

Defendant challenges the warrant application's failure to mention that the internet connection

provided by a wireless router may, in certain circumstances, be accessed from outside of the

premises where the router is located.  Br. at 6-7.  As a result, Defendant requests a hearing

pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) to determine "whether the omission of any

reference to the possible presence of a wireless router . . . was a material omission . . . and

whether the omission was the result of a deliberate intention to mislead."  Br. at 13.

### A.  Legal Standard

   The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the

persons or things to be seized." U.S. Const. amend. IV.  Although "a search . . . pursuant to a

warrant is presumed valid," a defendant may, "[i]n certain circumstances, . . . challenge the

truthfulness of factual statements made in the affidavit, and thereby undermine the validity of the

warrant and the resulting search." *United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003)

(citing *Franks v. Delaware*, 438 U.S. 154, 162-72 (1978)).  "In order to invoke the *Franks*

doctrine, [a defendant] must show that there were intentional and material misrepresentations or

omissions in [the agent's] warrant affidavit." *Id.*

      Information is material if "the alleged falsehoods or omissions were necessary to the

[issuing] judge's probable cause finding." *Id.* at 64-65 (quoting *United States v. Canfield*, 212

F.3d 713, 718 (2d Cir. 2000)).  In evaluating materiality, the Court should "insert the omitted

truths," *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (citation omitted), and

determine whether "there remains a residue of independent and lawful information sufficient to

support probable cause." *Awadallah*, 349 F.3d at 65 (quoting *Canfield*, 212 F.3d at 718).

Because materiality, which turns on the existence of probable cause, is a legal question, *see id.*;

*see also United States v. Thomas*, 788 F.3d 345, 349 (2d Cir. 2015), resolving whether

information allegedly omitted from a search warrant application was material does not require an

evidentiary hearing. *See Franks*, 438 U.S. at 171-72 ("[W]hen material that is the subject of the

alleged falsity or reckless disregard is set to one side [and] there remains sufficient content in the

warrant affidavit to support a finding of probable cause, no hearing is required.").

    **B.  Discussion**

      The Court will focus on the materiality prong in resolving Defendant's motion.  In doing

so, the Court will evaluate whether, in light of the additional information raised by Defendant,

"there remains a residue of independent and lawful information sufficient to support probable

cause." *Awadallah*, 349 F.3d at 65 (quoting *Canfield*, 212 F.3d at 718). Because probable cause

does not require the same level of proof as "would be sufficient to convict the suspect at trial,"

*United States v. Webb*, 623 F.2d 758, 761 (2d Cir. 1980), "[t]he fact that [some] innocent

explanation may be consistent with the facts alleged . . . does not negate probable cause." *United*

*States v. Klump*, 536 F.3d 113, 120 (2d Cir. 2008) (quoting *United States v. Fama,* 758 F.2d 834,

838 (2d Cir. 1985)). Instead, "[p]robable cause to search exists where circumstances indicate a

'fair probability that contraband or evidence of a crime will be found in a particular place.'"

*McColley v. Cty. of Rensselaer*, 740 F.3d 817, 841 (2d Cir. 2014) (quoting *Illinois v. Gates*, 462

U.S. 213, 238 (1983)).

     Here, Defendant argues that omitting information about the ability of others to access

unsecure wireless internet connections was material because accurate information would

undermine probable cause. Br. at 9, 13. This argument has been rejected by numerous circuit

and district courts. For example, in *United States v. Perez*, 484 F.3d 735 (5th Cir. 2007), the

defendant argued that "the association of an IP address with a physical address does not give rise

to probable cause to search that address" because "an unsecure wireless connection" would

enable "neighbors . . . to easily use [his] internet access to make the [relevant] transmissions."

*Id*. at 740. The Fifth Circuit conceded that "it was possible that the transmissions originated

outside of the residence to which the IP address was assigned," but nevertheless held that

probable cause was established because "it remained likely that the source of the transmissions

was inside that residence." *Id*. At least five other circuit courts have followed suit and

permitted "evidence that the user of a computer employing a particular IP address possessed or

transmitted child pornography [to] support a search warrant for the physical premises linked to

that IP address." *United States v. Vosburgh*, 602 F.3d 512, 526 & n.13 (3d Cir. 2010) (collecting

cases from the Fifth, Sixth, Eighth, Ninth, and Tenth Circuits). District courts in this circuit have come to the same conclusion. *See United States v. Thomas*, No. 5:12-CR-37 (CR), 2013 WL 6000484, at *24 (D. Vt. Nov. 8, 2013), *aff'd*, 788 F.3d 345 (2d Cir. 2015) ("[C]ourts have consistently found probable cause exists when an IP address that appears to have accessed child pornography can be traced to an identifiable residence."); *United States v. Chamberlin*, No. 09-CR-6169 (CJS), 2010 WL 1904500, at *7 (W.D.N.Y. May 12, 2010), *report and recommendation adopted*, No. 09-CR-6169 (MWP), 2010 WL 2287562 (W.D.N.Y. June 2, 2010) (rejecting defendant's challenge to a search warrant based on "the possibility that another person or computer could have gained access to the internet using [defendant's] IP address"). Defendant has not pointed to, and the Court has not found, any decision to the contrary.

Despite the uniformity of authority on this point, Defendant argues that prior cases are distinguishable because none involved multi-unit buildings. Reply Br. at 4-5. As an initial matter, the Third Circuit's decision in *Vosburgh* and the district court's decision in *Chamberlin* did involve apartments in multi-unit buildings. *See Vosburgh*, 602 F.3d at 518; *Chamberlin*, 2010 WL 1904500, at *1, *report and recommendation adopted*, 2010 WL 2287562. The Court recognizes that it is possible for someone in one unit of a multi-unit building to access an unsecure wireless internet connection registered to another nearby unit. However, the Court is in agreement with the authority cited above that this potential "innocent explanation" does not negate the "fair probability that contraband or evidence of [child pornography] will be found" at the address of the registered user of a particular IP address linked to child pornography, even if that user lives in a multi-unit building. *Klump*, 536 F.3d at 120 (citation omitted); *McColley*, 740 F.3d at 841 (quoting *Gates*, 462 U.S. at 238). Thus, even considering information about unsecured wireless routers, "there remains a residue of independent and lawful information

6

sufficient to support probable cause.'" *Awadallah*, 349 F.3d at 65 (quoting *Canfield*, 212 F.3d at 718).

Because the omitted information does not alter the probable cause determination, there is no need for a *Franks* hearing and Defendant's motion to suppress on this basis is denied.

## III.   STALENESS

Next, Defendant, pointing to the nine-month lapse between whitekkk's activity on Website A and the issuance of the related search warrant, argues that the information presented in the warrant application was stale. Br. at 13-15. Because there is no factual dispute about what information was presented in the search warrant application, no hearing is necessary to resolve the question of whether that information was stale. *See United States v. Irving*, 452 F.3d 110, 125 (2d Cir. 2006) (staleness is a legal question).

### A.  Legal Standard

Probable cause must "exist *as of the time of the search*." *United States Raymonda*, 780 F.3d 105, 114 (2d. Cir. 2015) (quoting *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993)). As a result, if information presented in a search warrant "is not sufficiently close in time to the issuance of the warrant" and "the facts supporting criminal activity have grown stale," there is not probable cause to issue the warrant. *Id*. (quoting *Wagner*, 989 F.2d at 75) (internal quotation marks omitted). However, if the search warrant application "establishes a pattern of continuing criminal activity such that there is reason to believe that the cited activity was probably not a one-time occurrence," probable cause may be established based on old information. *Id*. (quoting *Wagner*, 989 F.2d at 75) (internal quotation marks omitted).

Relevant here, "it is well known that images of child pornography are likely to be hoarded by persons interested in those materials." *Raymonda*, 780 F.3d at 114 (quoting *Irving*,

7

452 F.3d at 125).  As a result, "evidence that such persons possessed child pornography in the

past supports a reasonable inference that they retain those images—or have obtained new ones—

in the present." *Id*.  Based on this principle, old information can support a finding of probable

cause in a child pornography case if the search warrant application "raises the inference that [the

suspect] w[ould] hoard" images of child pornography. *Id*. at 115.  This inference may be

established by "circumstances tend[ing] to negate the possibility that a suspect's brush with child

pornography was a purely negligent or inadvertent encounter," including either "an extended

history of possessing or receiving pornographic images" or a single instance of possession or

receipt of child pornography if "circumstances suggest[ed] that [the suspect] had accessed those

images willfully and deliberately." *Id*. at 114-15 (collecting cases).

### B. Discussion

In arguing that the nine-month-old information contained in the search warrant

application was stale, Defendant relies heavily on the Second Circuit's decision in *Raymonda*, a

case involving a nine-month delay in seeking a warrant in a child pornography case. *Raymonda*,

780 F.3d at 110.  The Second Circuit held that "a single incident of access to thumbnail images

of child pornography, absent any other circumstances suggesting that the suspect accessed those

images deliberately or has a continuing interest in child pornography, fails to establish probable

cause that the suspect will possess illicit images many months later." *Id*. at 109.  In that case, the

internet user viewed thumbnails of child pornography for seventeen seconds on a single day

without viewing or downloading any individual images. *Id*. at 110, 112.  Under these

circumstances, the Court found no "inference that [the defendant] w[ould] hoard those images"

because the facts were "at least equally consistent with an innocent user inadvertently stumbling

upon a child pornography website, being horrified at what he saw, and promptly closing the window" as with purposefully seeking out child pornography. *Id*. at 115, 117.

That is not the case here, where the facts alleged in the affidavit establish *both* "an extended history of possessing or receiving pornographic images" and "circumstances suggest[ing] that [the suspect] had accessed those images willfully and deliberately." *Raymonda*, 780 F.3d at 114-15. On the first prong, the registered user whitekkk was actively logged into Website A for 22 hours between February 18, 2015 and March 4, 2015, accessed at least three posts, and viewed dozens of images and one video of child pornography in that time. *Id*. ¶ 18(b)-(e). On the second prong, Website A could only be accessed by registered users after downloading certain software and "obtain[ing] the web address . . . directly from another user." Dkt. No. 22 Ex. A ¶ 17(b)-(c) & n.3, (d)(ii). These facts are not "equally consistent with an innocent user inadvertently stumbling upon a child pornography website . . . and promptly closing the window." *Raymonda*, 780 F.3d at 117. To the contrary, these "circumstances suggest[] that [the user] accessed [multiple] images willfully and deliberately." *Id*. at 115.

Because the information presented in the search warrant application "raise[d] the inference that [the suspect] w[ould] hoard" images of child pornography, *id*. at 115, the Court denies Defendant's motion to suppress on staleness grounds.

## IV. IDENTIFICATION

Finally, Defendant argues that the photo array shown to his alleged victim was unduly suggestive and requests a *Wade* hearing on the reliability of the identification. Br. at 15-16.

### A. Legal Standard

"Reliability is the touchstone for the admission of eyewitness identification testimony." *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009). If a witness has made a pretrial identification

9

of a defendant, "a sequential inquiry is required in order to determine whether either the prior

identification or an in-court identification of the defendant at trial is admissible." *Raheem v.*

*Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). The first step, which is the only step relevant here,

requires the Court to evaluate "whether the pretrial identification procedures were unduly

suggestive of the suspect's guilt." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d

Cir. 1990).

      In determining whether a photo array is unduly suggestive, courts look to "the size of the

array, the manner of presentation by the officers, and the array's contents." *Id*. at 974. An

identification procedure is unduly suggestive if it creates "a very substantial likelihood of

irreparable misidentification," *Brisco*, 565 F.3d at 88 (quoting *Simmons v. United States*, 390

U.S. 377, 384 (1968)), by "suggest[ing] to an identifying witness that [a particular person] was

more likely to be the culprit." *Maldonado-Rivera*, 922 F.2d at 974 (quoting *Jarrett v. Headley*,

802 F.2d 34, 41 (2d Cir. 1986)). Under this standard, a single-photo array is unduly suggestive

because it raises "the necessary suggestion" that the individual depicted in the photograph "w[as]

the perpetrator[]." *U.S. ex rel. John v. Casscles*, 489 F.2d 20, 25 n.5 (2d Cir. 1973). Similarly,

two-photo arrays create "undue focus on" the defendant, *Maldonado-Rivera*, 922 F.2d at 974,

and increase the risk that a witness may misidentify the suspect, *see Brisco*, 565 F.3d at 88

(quoting *Simmons*, 390 U.S. at 384), in choosing between the two options presented by law

enforcement.

## B. Discussion

      Defendant first attacks the composition of the photo array. Although he does not allege

any specific deficiencies with respect to the photographs in the array, *see* Dkt. No. 30 Ex. A, he

"requests a hearing . . . [to] determine . . . what [] description . . . the victim gave of the

perpetrator, so that the Court can determine whether the photos used in the array were a fair sample of persons who could have fit the description given." Br. at 16.  Because a defendant must "allege facts supporting his contention that the identification procedures used were impermissibly suggestive" and may not request a hearing merely to "develop a factual record," Defendant is not entitled to a *Wade* on the photo array's composition. *United States v. Williams*, No. 13-CR-580 (JMF), 2014 WL 144920, at *1-*2 (S.D.N.Y. Jan. 15, 2014) (quoting *United States v. Berganza,* No. S(4) 03-CR-987 (DAB), 2005 WL 372045, at *10 (S.D.N.Y. Feb. 16, 2005)).

Next, Defendant challenges the size of the array and its manner of presentation as unduly suggestive.  His argument is based on the proposition that the agent conducting the identification did not show all six photographs in the photo array to the witness, but instead stopped the procedure after the witness identified Defendant in the second photograph.  Nooter Aff. ¶ 14. Defendant's argument seems to be that this transforms an otherwise permissible six-photo array into an impermissible two-photo array.

Although Defendant correctly notes that one- and two-photo arrays have been widely condemned, *see Casscles*, 489 F.2d at 24, his attempt to analogize the six-photo array at issue to an impermissible two-photo array is unpersuasive.  The witness here interrupted the officer's administration of the six-photo array to identify the second of six photographs.  Nooter Aff. ¶ 14. As described, this procedure does not present the same "substantial likelihood of irreparable misidentification," *Brisco*, 565 F.3d at 88 (quoting *Simmons*, 390 U.S. at 384), as a straightforward two-photo array, where a witness is asked to choose between only two photographs and thus has a 50% chance of randomly selecting the person being investigated by law enforcement.  Nor does the procedure described create "undue focus on" the suspect or

11

otherwise "suggest . . . that [a particular person] was more likely to be the culprit." *Maldonado-Rivera*, 922 F.2d at 974 (quoting *Jarrett*, 802 F.2d at 41). Furthermore, a witness's immediate identification generally weighs against finding a photo array to be unduly suggestive. *See Greiner v. Wells*, 417 F.3d 305, 308 (2d Cir. 2005) (witness immediately identified the defendant from a six-photograph array); *United States v. Gibson*, 135 F.3d 257, 259 (2d Cir. 1998) (witness "immediately identified photograph number one" as the defendant); *Dailey v. Graham*, No. 12-CV-6034 (ERK), 2015 WL 4872560, at *8 (E.D.N.Y. Aug. 13, 2015) ("[W]itnesses immediately identified the [defendant] [] from the photo array."); *Killimayer v. Rock*, No. 12-CV-6328 (NSR), 2013 WL 5586651, at *5-*6 (S.D.N.Y. Oct. 9, 2013) (witnesses "immediately identified [the defendant's] photo" after viewing photo array").

As a result, the Court concludes that, unlike asking a witness which of two photographs might depict a suspect, a witness immediately identifying the second photograph in an array containing six photographs does not create "a very substantial likelihood of irreparable misidentification" and thus is not unduly suggestive. *Brisco*, 565 F.3d at 88 (quoting *Simmons*, 390 U.S. at 384). As a result, the Court denies Defendant's motion for a *Wade* hearing on that ground. Any "suspicion of improprieties [regarding the identification procedures] may be adequately tested through cross-examination at trial." *Swain*, 2011 WL 4348142, at *7 (quoting *United States v. Padilla*, No. 94-CR-313 (CSH), 1994 WL 681812, at *8 (S.D.N.Y. Dec. 5, 1994).

## V.    CONCLUSION

For the foregoing reasons, Defendant's motion is denied. In accordance with the Court's April 18, 2016 order, Dkt. No. 35, the parties shall submit no later than April 29, 2016: (1) an agreed upon 1-2 paragraph description of the case to be read to potential jurors during Voir Dire;

12

(2) any Voir Dire requests; and (3) any Requests to Charge.  Any 404(b) motion and motions *in limine* shall be filed by April 29, 2016, with opposition papers, if any, due May 6, 2016 and replies, if any, due May 13, 2016.

This resolves Dkt. Nos. 19, 21.


SO ORDERED.

Dated: April ____, 2016
New York, New York

ALISON J. NATHAN
United States District Judge

13