

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/08/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States,<br><br>   –against–<br><br>David Keith,<br><br>     Defendant. | 15-cr-827 (AJN) |
| David Keith,<br><br>    Movant,<br><br>   –against–<br><br>United States,<br><br>     Respondent. | 20-cv-4410 (AJN)<br><br>MEMORANDUM<br>OPINION & ORDER |

ALISON J. NATHAN, Circuit Judge, sitting by designation:

Before the Court is *pro se* Defendant David Keith's Motion to Vacate, Set Aside, or Correct the Sentence brought under 28 U.S.C. § 2255. For the reasons that follow, Keith's motion is denied.

## BACKGROUND

### I. Keith's Plea and Sentencing

On November 30, 2015, the Government filed the first Indictment in this case, charging Keith with two counts of production of child pornography, in violation of 18 U.S.C. §§ 2251(a), (e), and 2 (Counts One and Two); one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B) and (b)(1), and 2 (Count Three); and one count of possession of child

pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), and 2 (Count Four).  Dkt. No. 5 at 1–7.[1]  On January 29, 2016, at Keith's request, Dkt. No. 11, the Court appointed Thomas Nooter, a member of the Southern District of New York's Criminal Justice Act ("CJA") panel, as Keith's lawyer, *see* Dkt No. 17.

Keith filed a motion to suppress on March 17, 2016, challenging the validity of the warrant authorizing the search of Keith's mother's premises ("the Premises Warrant") and the fruits of that search, including a recorded statement made by Keith, as well as an identification procedure used to identify Keith.  Dkt. No. 21.  The Court denied the motion on April 22, 2016. *United States v. Keith*, 183 F. Supp. 3d 427, 428 (S.D.N.Y. 2016) (Dkt. No. 36).

On May 6, 2016, the Government filed a First Superseding Indictment, which added one additional count: that Keith violated 18 U.S.C. § 2251 while required by New York state law to register as a sex offender, in violation of 18 U.S.C. § 2260A (Count Five).  Dkt. No. 44, ¶ 5.  The addition of this new count raised Keith's mandatory minimum sentence, upon a conviction on either child pornography production count, by 10 years.  *See* 18 U.S.C. § 2260A.

Throughout this period, Keith maintained to Nooter, his attorney, that he had an alibi with respect to the child pornography production counts: that he was in Atlanta, Georgia at the time the videos were recorded and had lent his car to a friend while he was out of state, and therefore was not the man depicted in the videos at issue.  Dkt. No. 139-1 ("Nooter Decl."), ¶ 8. Nooter directed an investigator to attempt to corroborate Keith's story, who initially appeared to have some success in doing so.  *Id.* ¶¶ 9–11, 28.  Keith then participated in an innocence proffer with the Government in June 2016, during which Keith signed a written agreement stating that anything he said during the proffer could be used against him at trial and relayed his alibi.  *Id.*

---

[1] Unless otherwise noted, all docket references are to 15-CR-827.

¶¶ 13–14.  Shortly thereafter, however, the Government confirmed that Keith was, in fact, in New York during the period he claimed to have been in Atlanta and determined that Keith's alibi was fabricated.  *Id.* ¶¶ 15, 17; Dkt. No. 125 ("PSR"), ¶ 26.[2]

On November 22, 2016, the Government filed a Second Superseding Indictment (the "Indictment"), adding an additional charge that Keith had made false statements to the Government on June 20 and 21, 2016 during the innocence proffer, in violation of 18 U.S.C. § 1001(a)(2) (Count Six).  Dkt. No. 63 ("Indictment"), ¶ 6.  Keith was arraigned on this Indictment on the same day, at the final pretrial conference.  *See* Dkt. No. 68.

Shortly before trial was set to begin on December 5, 2016, defense counsel indicated to the Government that Keith might be willing to accept a plea deal.  Keith premised acceptance on two conditions, each of which was designed to affect the mandatory minimum sentence to which he was exposed.  Dkt. No. 139 ("Gov't Opp'n"), at 5; Nooter Decl. ¶¶ 17–18.  First, the Government had to agree to drop Count Five of the Indictment, which, if it resulted in conviction, would have increased the mandatory minimum sentence Keith faced under Counts One and Two by ten years.  Second, Keith wanted the plea to preserve a legal argument that his prior convictions for sexual misconduct under New York Penal Law § 130.20 did not constitute convictions for crimes "relating to . . . sexual abuse" under 18 U.S.C. §§ 2251(e) and 2252A(b)(1)–(2).  The effect of a ruling on that issue in Keith's favor would have been to reduce his mandatory minimum to 15 years, rather than 25.  The plea would provide Keith the right to appeal an adverse determination on this legal issue in the event the Court ruled against him *and* imposed a minimum sentence of 25 years.  *See* Dkt. No. 70 ("Nov. 29, 2016 Tr."), at 10–11, 34–35.

---

[2] The factual recitation in the PSR was adopted by the Court in relevant part without objection.  Dkt. No. 106 ("Sept. 5, 2017 Tr."), at 19.

The Government accepted the proposal, and on November 29, 2016—a week before trial was set to commence—Keith pleaded guilty to five counts of the Indictment (*i.e.*, every count but Count Five).  The effect of the plea was straightforward: beyond reserving his right to argue that the mandatory minimum was only 15 years, Keith lowered the maximum mandatory minimum from 35 years to 25 years.  He thus avoided a sentence, upon conviction, that could require, at a minimum, that he be in prison until he turned 74.

At the plea colloquy, the Court ensured that Keith was competent to plead, that he understood his rights, and that he understood the terms of the agreement.  Specifically, Keith affirmed under oath, *inter alia*, that he was satisfied with his lawyer's representation and that he understood the consequences of pleading guilty.  *See* Nov. 29, 2016 Tr. at 1–9.  The Court also ensured that the dispute carved out in the plea agreement was a purely legal one, and that Keith understood its contours and implications.  *See id.* at 9–12 (confirming, *inter alia*, that "Mr. Nooter . . . discussed with [Keith] that, should [the Court] be persuaded by the government's view of the law . . . [Keith will] be subject, as a result of his plea, to the higher mandatory minimum and higher maximum sentences, and if [the Court] were to make that determination, [Keith] would still not be able to withdraw his plea of guilty in the face of that determination"); *id.* at 18–25 (explaining in detail the mandatory minimums for each count and the effect of the pending legal issue on those minimums); *id.* at 18–19 (explaining to Keith that, should the Court "decide against [him] on [the outstanding legal issue, he] will have no right to withdraw [his] plea of guilty").

In his allocution, Keith testified that he created sexually explicit videos of two different underage female victims for the purpose of sexual gratification.  *Id.* at 37–39.  Keith further allocuted to knowingly receiving visual depictions of child pornography, *id.* at 40, and admitted

to knowingly possessing child pornography depicting sexually explicit photos of children under

12, *id.* at 41–42.  Finally, Keith admitted that his statements to a prosecutor and federal agent

that he was in Atlanta, Georgia from October 10 to 22, 2013, were knowingly false.  *Id.* at 42–

43.  The Government proffered that it would have introduced at trial, *inter alia*, testimony

regarding videos, images, and computer forensic data found on Keith's electronic devices, the

videos, images, data themselves, and testimony from the victims.  *Id.* at 45.

On January 4, 2017, Keith moved to preclude the application of certain sentencing

enhancements under 18 U.S.C. §§ 2251 and 2252A that would have had the effect of increasing

his mandatory minimum sentence.  Dkt. No. 72.  After the parties fully briefed the issue, the

Court, on May 16, 2017, issued a memorandum and order holding that Keith's prior conviction

in New York for engaging in non-consensual sexual intercourse, under N.Y. Penal Law

§ 130.20(1), was categorically a crime "relating to . . . sexual abuse," 18 §§ 2251(e),

2252A(b)(1), (2), and that the higher mandatory minimums applied.  *United States v. Keith*, No.

15-CR-827 (AJN), 2017 WL 11683831, at *7 (S.D.N.Y. May 16, 2017) (Dkt. No. 84).

Two days later, the Court received a letter from defense counsel stating that Keith was

"extremely upset by the ruling" and "wishe[d] to make a motion to withdraw his guilty plea."

Dkt. No. 85 at 1.  The Court scheduled a conference to address Keith's request, and to potentially

appoint new counsel to make such a motion.  Dkt. No. 91 ("May 25, 2017 Tr.").  On May 25,

2017, the Court appointed Marc Berger as additional CJA counsel, *id.*, and on June 8, 2017,

Berger notified the Court that he had "reviewed the relevant filings and transcripts[] and[, *inter*

*alia*], conferred with Mr. Keith's CJA Counsel, . . . [and] at th[at] time . . . d[id] not see a valid

legal basis for [Keith] to move to withdraw his guilty plea." Letter from Marc P. Berger to Hon. Alison J. Nathan (June 8, 2017).[3]

On June 20, 2017, the Court held a conference to confirm that Keith no longer sought appointment of new counsel for the purpose of moving to withdraw his plea. At that conference, however, Nooter raised an entirely new issue, explaining that Keith had alerted him to the possibility that a meritorious motion to suppress might have been filed in this case, but Nooter had failed to discover it. Dkt. No. 94 at 4. In particular, Nooter noted that the search of Keith's residence that resulted in the seizure of much of the Government's evidence in this case was based on probable cause derived from an earlier search involving the use of a network investigate technique ("NIT") to locate the addresses of individuals accessing a website notorious for hosting child pornography. *Id.* at 4–6.[4] The Court thereafter granted leave for Keith, through independent counsel, to file a motion to withdraw the guilty plea stemming from purported improprieties in the earlier NIT Warrant, arguing that Nooter was constitutionally ineffective in failing to investigate this line of argument and advising Keith that he could forego a plea and pursue a motion to suppress on that basis. *See id.* at 12–13.

The Court denied Keith's motion to withdraw on August 13, 2017, Dkt No. 98, and issued a memorandum and order explaining its reasoning shortly thereafter. *United States v. Keith*, No. 15-CR-827 (AJN), 2017 WL 11681947 (S.D.N.Y. Aug. 18, 2017) (Dkt. No. 101). The Court concluded that the hypothetical motion to suppress would have been denied as without merit and that Nooter neither acted unreasonably nor prejudiced Keith by failing to advise him to make such a motion. *Id.* at *16. In conclusion, the Court noted:

---

[3] This document was filed under seal and does not appear on the docket.

[4] The Court hereafter refers to the warrant authorizing this search as "the NIT Warrant."

> [A]s the procedural history of this motion suggests, it may be that Mr. Keith's real reason for seeking withdrawal from his plea is not to file a motion that the Court has explained to be without merit, but because he is dissatisfied with this Court's resolution of his motion to preclude application of certain sentencing enhancements. At the plea colloquy, Mr. Keith was informed, repeatedly, that he could not withdraw his plea regardless of how that motion were resolved. The fact that Mr. Keith lost the legal motion contemplated by his Plea Agreement, and that his mandatory minimum sentence is thus higher than he hoped it would be, does not give him the right to now withdraw his plea.

*Id.* (citation omitted).

On September 5, 2017, the Court sentenced Keith to a Guidelines term of 168 years of imprisonment and a lifetime term of supervised release. Sept. 5, 2017 Tr. at 52. Judgment was entered on November 16, 2017, Dkt. No. 118, later amended on December 4, 2017, Dkt. No. 123.

## II.   **Keith's Direct Appeal and Subsequent Procedural History**

Keith filed a notice of appeal on November 28, 2017. Dkt. No. 120. On appeal, Keith, through new appellate counsel, Bruce Bryan, argued that "his conviction must be vacated because his guilty plea was involuntary, and in the alternative that his 168-year sentence must be vacated because it is substantively unreasonable." *United States v. Keith*, 765 F. App'x 526, 528 (2d Cir. 2019) (summary order).

The Second Circuit rejected Keith's arguments. First, the court held "it was not objectively unreasonable for Keith's counsel to forgo investigating and advising Keith regarding" a motion to suppress based on alleged deficiencies in the NIT Warrant, nor was there any "basis for a claim that Keith would have decided to proceed to trial rather than plead guilty if the motion had been made, because the district court stated that if Keith had filed such a motion, the Court would have rejected it as without merit." *Id.* at 529 (cleaned up). Accordingly, Keith "failed to show that his counsel's deficient performance undermined the voluntary and intelligent nature of his decision to plead guilty," and this Court did not err in denying Keith's motion to

withdraw his plea. *Id.* (cleaned up).  Second, the panel held that "[t]he record demonstrates that Keith knowingly and voluntarily waived the right to appeal the sentence he received."  *Id.* at 530. Because this appeal waiver was enforceable, and Keith's remaining "challenges to his sentence do not allege ineffectiveness [of counsel] at the time he entered into the plea agreement"—alleging instead "that his counsel was ineffective at sentencing"—"Keith's challenge to the substantive reasonableness of his sentence, and his *pro se* arguments that the warrant that authorized the search of his home was invalid, are barred by the appeal waiver and must be dismissed."  *Id.*

Keith, acting *pro se*, filed the present motion under 28 U.S.C. § 2255 on June 4, 2020, raising, among other arguments, multiple claims of ineffective assistance of counsel.[5]  Dkt. No. 129 ("Def.'s Mot.").[6]  The Court concluded that "by making the motion, [Keith] has waived the attorney-client privilege as a matter of law," Dkt. No. 135 at 1, and directed him to execute and file a privilege waiver form, which he did on September 11, 2020, Dkt. No. 136.  The Government filed its opposition on November 17, 2020, Gov't Opp'n, which attached a declaration from Nooter, Keith's former counsel, Nooter Decl.  After seeking, and receiving, several extension requests, Dkt. Nos. 140, 141, 142, 143, 144, Keith filed his reply on October 6, 2021, Dkt. No. 145 ("Def.'s Reply").

---

[5] On April 29, 2020, Keith also filed a *pro se* motion seeking to correct a purported clerical error in the judgment under Rule 36 of the Federal Rules of Criminal Procedure, raising arguments that overlap with those in Ground Eleven of his present § 2255 motion.  Dkt. No. 127.  The Rule 36 motion is duplicated on the docket at Dkt. No. 128.

[6] References to specific pages in this document are to the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

**DISCUSSION**

Keith raises fifteen separate grounds for relief in his motion, arguing that:

- (1) Keith's plea was not knowing due to his trial counsel's constitutionally ineffective performance in multiple respects, Def.'s Mot. 4–6;

- (2) Keith's appellate counsel's presentation of his ineffective assistance of counsel claims pertaining to the NIT and Premises Warrants was itself constitutionally ineffective, *id.* at 7–10;

- (3) Keith's trial counsel was constitutionally ineffective in failing to challenge the Premises Warrant's particularity, *id.* at 11–17;

- (4) Keith's trial counsel was constitutionally ineffective in failing to develop an argument concerning the production counts based on Keith's intent with respect to his minor victims, *id.* at 18–20;

- (5) Keith's trial counsel was constitutionally ineffective in failing to argue the Indictment was facially deficient, *id.* at 21;

- (6) there is no evidence of the "actual images" that a minor was used to produce supporting the production charges, *id.* at 22;

- (7) Keith's trial counsel was constitutionally ineffective in failing to argue that 18 U.S.C. § 2251 is outside Congress's Commerce Clause power to enact, *id.* at 23–25;

- (8) Keith's trial counsel was constitutionally ineffective in failing to challenge the constitutionality of 18 U.S.C. § 2251's jurisdictional hook, *id.* at 27–31;

- (9) Keith's trial counsel coerced Keith's guilty plea through various failings and promises, *id.* at 32–33;

- (10) Keith's trial and appellate counsel were constitutionally ineffective in failing to argue that Keith's lifetime term of supervised release precluded the imposition of any term of imprisonment, *id.* at 34–37;

- (11) Keith's trial counsel was constitutionally ineffective in failing to offer advice regarding the aiding and abetting charges in the Indictment, *id.* at 38–41;

- (12) Keith's trial counsel was constitutionally ineffective in advising him to participate in the innocence proffer, *id.* at 42–44;

- (13) the Sixth Amendment required that Keith be provided with an equal number of attorneys and investigators of similar skill and power as those employed by the Government, *id.* at 45–46;

- (14) Keith's trial counsel provided constitutionally ineffective assistance and deceived Keith with respect to certain DNA test comparison results, *id.* at 47–52;

- (15) 28 U.S.C. § 2255 does not provide an adequate remedy for most of the claims Keith raises, *id.* at 53–60.

The Court will begin with a brief discussion of relevant legal principles before addressing each of Keith's claims in turn.

## I.   <u>Applicable Legal Principles</u>

### a.   **Considerations for § 2255 Motions**

A petitioner may collaterally attack his conviction and sentence by "mov[ing] the court which imposed the sentence to vacate, set aside, or correct the sentence."  28 U.S.C. § 2255(a).  However, "[b]ecause collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack."  *Diaz v. United States*, Nos. 20-CV-232 (RJS), 16-CR-719-5 (RJS), 2020 WL 5731610, at *2 (S.D.N.Y. Sept. 24, 2020) (Sullivan, J.) (quoting *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010)).

One such rule is the "mandate rule," which prevents a petitioner from collaterally attacking her sentence when she has already tried and failed to attack it on the same grounds on direct appeal.  *See Yick Man Mui*, 614 F.3d at 53; *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001) (per curiam).  Moreover, "[t]he mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate."  *Yick Man Mui*, 614 F.3d at 53.  In other words, "a Section 2255 petitioner may not relitigate questions which were raised and considered on direct appeal."  *Id.* at 55 (cleaned up).  The mandate rule thus "bars the raising in a habeas proceeding of a claim when the events underlying the claim were the same as those underlying a claim raised and decided on the merits on direct appeal."  *Id.* at 56.  A habeas petitioner may not

avoid this bar merely by offering "a slightly altered rearticulation of a claim that was rejected on his direct appeal." *United States v. Pitcher*, 559 F.3d 120, 124 (2d Cir. 2009) (per curiam) (internal quotation marks omitted).

Separately, if a habeas petitioner could have brought a claim on direct appeal, but failed to do so, the claim is barred as procedurally defaulted. *See, e.g.*, *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011). There are limited exceptions to this rule. The petitioner may premise a collateral attack on an argument he failed to raise on appeal if he "establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." *Id.* at 231; *see also Bousley v. United States*, 523 U.S. 614, 622 (1998). In addition, the procedural default rule does not bar "a Section 2255 petitioner, having already raised one or more ineffective assistance claims on direct appeal that were disposed of on the merits" from "rais[ing] additional ineffective assistance claims in a habeas proceeding. *Yick Man Mui*, 614 F.3d at 55. "[T]he only barrier to raising" such claims "after raising such claims on direct appeal is the mandate rule, i.e., strategies, actions, or inactions of counsel that gave rise to an ineffective assistance claim adjudicated on the merits on direct appeal may not be the basis for another ineffective assistance claim in a Section 2255 proceeding." *Id.* at 57.

### b.   Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness; and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This standard is "highly demanding." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986)). The ineffective assistance of counsel claim "must be rejected if the [petitioner] fails to meet either the performance prong or the prejudice prong." *Id.*

In evaluating the reasonableness of counsel's representation, the Court is "mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts." *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008). As a result, the Court is "highly deferential" and applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990). Constitutionally inadequate performance may be established if a habeas petitioner "shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). Nonetheless, "[t]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance to which [a] [p]etitioner [i]s entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (cleaned up). Simple disagreement with counsel's chosen strategy, especially with the benefit of hindsight, is insufficient to support an ineffective assistance of counsel claim. *See United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986); *Camper v. United States*, Nos. 19-CV-2000 (AJN), 13-CR-378 (AJN), 2021 WL 4504700, at *2 (S.D.N.Y. Oct. 1, 2021). Rather, "the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

### c.   Waiver of Right to Appeal and Impact of Guilty Plea

The Second Circuit has "long held that waivers of the right to appeal a sentence are

presumptively enforceable." *United States v. Burden*, 860 F.3d 45, 51 (2d Cir. 2017) (per

curiam) (cleaned up).  This presumption encompasses situations in which, as here, "[t]he plea

agreement between [Keith] and the Government provided that [Keith] waived his right

collaterally to attack his sentence in a § 2255 petition so long as the Court imposed a sentence

within or below the guidelines range, which it did." *Francisco v. United States*, Nos. 16-CV-

1073 (DLC), 13-CR-217-2 (DLC), 2016 WL 4257522, at *2 (S.D.N.Y. Aug. 9, 2016) (citing

*Garcia-Santos v. United States*, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam)).  The

enforceability of an appeal waiver is subject to certain limited exceptions, including, as relevant

here, if the waiver "was not made knowingly, voluntarily, and competently." *Burden*, 860 F.3d

at 51 (internal quotation marks omitted)).

Similarly, a guilty plea "conclusively resolves the question of factual guilt supporting the

conviction," so "on collateral attack of a judgment of conviction, . . . a petitioner may not assert

pre-plea constitutional violations bearing on the valid establishment of his factual guilt." *United

States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006) (per curiam); *see United States v. Torres*, 129

F.3d 710, 715 (2d Cir. 1997).  "Rather, a defendant may only attack the voluntary and intelligent

character of the guilty plea by showing that the advice he received from counsel was not within

acceptable standards." *Torres*, 129 F.3d at 715–16 (cleaned up).  However, "[e]verything that

occurs prior to a guilty plea or entry into a plea agreement informs the defendant's decision to

accept or reject the agreement." *Parisi*, 529 F.3d at 138.  Thus, an "ineffective assistance of

counsel claim survives the guilty plea or the appeal waiver only where the claim concerns the

advice the defendant received from counsel." *Id.* (cleaned up).  Accordingly, "although

challenging the attorney's role in shaping the defendant's bargaining position cannot avoid the waiver, challenging the attorney's *advice* about that bargaining position, by connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct, does." *Id.* at 138–39.

## II.   <u>Application to Keith's Claims</u>

### a.   Ground One

Keith first argues that his plea "was not knowing based upon trial counsel's objective incompetence and unprofessionalism in providing knowingly false advice and coercion."  Def.'s Mot. at 4.  "To evaluate a claim that a guilty plea was involuntary or unknowing due to ineffective assistance of counsel, we use the familiar framework established in *Strickland v. Washington*."  *United States v. Hernandez*, 242 F.3d 110, 112 (2d Cir. 2001) (per curiam). Keith's first ground for relief cites several bases for this alleged incompetence, including the failure to suppress the Premises and NIT Warrants.  Keith's argument with respect to the Premises Warrant is duplicative of his arguments in Ground Three and is addressed below.  His argument with respect to the NIT Warrant was previously considered and rejected by the Second Circuit, *Keith*, 765 F. App'x at 529, and accordingly, is foreclosed by the mandate rule, *Yick Man Mui*, 614 F.3d at 53.  Keith also raises further arguments based on the plea agreement's appeal waiver carveout and the length of the sentence his guilty plea exposed him to.  Neither withstands scrutiny.

Keith now contends that the appeal waiver carveout "was written intentionally misleading[ly]"; that the notion that Keith "would agree to only appeal a sentence less than 25 years, but not more than 25 years is wholly absurd"; that "counsel advised Mr. Keith that he would only receive a 300 month or less sentence based upon whether the Court found Mr.

Keith's prior[] [conviction] qualified to enhance the mandatory minimum"; and that "if counsel were constitutionally effective, he would have not advised Mr. Keith to accept a plea that would clear[l]y cause a 2,016 month sentence and could only be challenged if it only resulted in a 300 month sentence."  Def.'s Mot. at 5–6.

In contrast, Nooter attests in his sworn declaration that "I never said that I thought the Judge would not impose a greater sentence than the mandatory minimum of 25 years" given that "I know very well that it is impossible to predict what sentence a Judge will impose, and that even if I thought I could, that I cannot make such a prediction to a client because the client cannot be induced to enter a guilty plea because of a prediction by me that he will receive less than the statutory maximum sentence."  Nooter Decl. ¶ 24.  Nooter also describes the logic of the appeal waiver carveout in the plea agreement, which he says he "explained very carefully" to Keith:

> [T]he "carve-out" allowed me to argue to the Court that a prior misdemeanor conviction should not result in a ten-year enhancement of the mandatory minimum sentences on counts one and two. . . .  We also had an agreement that if the Court denied that motion and imposed a sentence at the higher minimum level (of 25 years) that Mr. KEITH could appeal, but that if the sentence imposed was higher than that, that the difference of opinion about the appropriate mandatory minimum would effectively be moot, and that the appeal waiver would apply.

Id. ¶ 25.  Nooter's "contrary sworn statements, alone, are likely sufficient to disregard [Keith's] account."  United States v. Zubiate, Nos. 18-CR-442 (AJN), 20-CV-9064 (AJN), 2022 WL 1294437, at *4 (S.D.N.Y. Apr. 29, 2022) (collecting cases).

In any event, at Keith's plea hearing, the Court walked through the terms of the plea agreement, including the scope of the appeal waiver, in detail, and Keith repeatedly confirmed that he understood and was knowingly and voluntarily agreeing.  After Keith confirmed that he had read and understood the plea agreement as well as the parties' respective views of the

applicable mandatory minimum sentence, Nov. 29, 2016 Tr. at 18–30, the Court specifically

explained that the plea agreement waived Keith's right to appeal unless the Court both (1)

rejected Keith's prior conviction arguments and (2) sentenced him to the mandatory minimum of

25 years, which Keith confirmed that he understood, *id.* at 34–35.  Nooter then explained the

rationale—namely, that if the Court imposed a sentence greater than 25 years then the dispute

over whether the applicable mandatory minimum was 15 or 25 years would be immaterial—and

Keith again confirmed he understood.  *Id.* at 35–36.  "These unambiguous statements on the

record confirm that [Keith] knowingly and voluntarily waived his right to collaterally attack the

sentence he ultimately received, and they belie any belated and self-serving suggestion that

[Nooter] compelled him to enter the plea agreement or failed to adequately explain its terms."

*Fernandez v. United States*, Nos. 12-CR-445 (JMF), 15-CV-2230 (JMF), 2016 WL 4735370, at

*4 (S.D.N.Y. Sept. 12, 2016).  Indeed, the Second Circuit previously held on direct appeal that

"[t]he record demonstrates that Keith knowingly and voluntarily waived the right to appeal the

sentence he received."  *Keith*, 765 F. App'x at 530.

Keith's argument that "[n]o cognitively sound person would have, absent some

erron[e]ous advice from counsel," pled guilty given his sentencing exposure similarly falls short.

Def.'s Mot. at 4.  Although Keith now claims that he "had been clearly advised by his Attorney

that even if the challenge to priors failed, he would only be facing 300 months," *id.* at 5, this

assertion is contradicted by both Nooter's sworn declaration, Nooter Decl. ¶ 24, and Keith's

colloquy at his plea hearing, at which the consequences of Keith's guilty plea—including a

stipulated guidelines sentence of either 168 or 108 years, depending on the Court's resolution of

the dispute over the impact of Keith's prior convictions—were clearly explained to, and

acknowledged by, him, *see, e.g.*, Nov. 29, 2016 Tr. at 25–26, 30–32.  The Court is entitled to

rely upon the defendant's sworn statements, made in open court . . . , that he understood the consequences of his plea, had discussed the plea with his attorney, knew that he could not withdraw the plea, understood that he was waiving his right to appeal a sentence [with one limited exception], and had been made no promises except those contained in the plea agreement." *Hernandez*, 242 F.3d at 112; *see United States v. Rivernider*, 828 F.3d 91, 105 (2d Cir. 2016); *see also, e.g.*, *Naranjo v. United States*, Nos. 17-CV-9573 (JSR) (BCM), 13-CR-351 (JSR), 2021 WL 1063442, at *6 (S.D.N.Y. Feb. 26, 2021) (disregarding petitioner's "unsupported assertions" of ineffective assistance as "starkly at odds with the more detailed affidavit of [his] attorney"), *report and recommendation adopted*, 2021 WL 1317232 (S.D.N.Y. Apr. 8, 2021); *Stitsky v. United States*, Nos. 15-CV-7889 (KMW), 06-CR-357 (KMW), 2018 WL 10741470, at *6 (S.D.N.Y. Oct. 25, 2018) ("Where, as here, a habeas court is faced with self-serving allegations that are contradicted by a credible affirmation from a trial attorney, it may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without further hearings." (cleaned up)), *reconsideration denied*, 2019 WL 1254566 (S.D.N.Y. Mar. 19, 2019).

And contrary to Keith's contention, the decision to plead guilty notwithstanding the potential sentence he faced was far from irrational.  As the Court previously explained in denying his motion to withdraw the plea, "Mr. Keith derived a substantial benefit from his last-minute plea: a reduction in his mandatory minimum sentence by ten years . . . that he was not likely to receive, were he convicted at trial, absent the plea." *Keith*, 2017 WL 11681947, at *15. Had Keith refused to plead when he did, he would have been "at best, no worse off than before . . . and, at worst, in a worse bargaining position and facing a trial where the Government would

have presented overwhelming evidence of guilt, and where Keith faced an even higher

mandatory minimum sentence." *Id.* at *16.

Accordingly, to the extent Keith's first ground for relief is not barred by the mandate

rule, it fails to satisfy either prong of the *Strickland* inquiry.

### b.   Ground Two

Keith next argues that "Appellate Counsel was incompetent in his presentation of Mr.

Keith's ineffective assistance of Trial Counsel's failure to challenge the NIT Warrant and failed

to argue the applicable exception to Good Faith." Def.'s Mot. at 7.  "Although the *Strickland*

test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel,

the same test is used with respect to appellate counsel." *Mayo*, 13 F.3d at 533 (citations

omitted).  Once again, Keith cannot satisfy either prong of *Strickland*.

Keith does not explain how his appellate counsel's representation actually fell short.  In

fact, Keith's appellate counsel devoted over twenty pages of briefing to developing the argument

that the NIT Warrant was invalid, that the good faith exception did not apply, and that Keith's

trial counsel's failure to investigate this argument and move to suppress on these grounds

constituted constitutionally ineffective assistance.  *See* Br. Def.-Appellant, David Keith at 50–71,

*United States v. Keith*, No. 17-3837-cr (2d Cir. Mar. 28, 2018), Dkt. No. 21.  Nevertheless, the

Second Circuit ultimately rejected this argument on both *Strickland* prongs, holding that (1) "the

overwhelming authority rejecting such motions to suppress demonstrates that it was not

objectively unreasonable for Keith's counsel to forgo investigating and advising Keith regarding

such a motion"; and (2) in any event, Keith was not prejudiced "because the district court stated

that if Keith had filed such a motion, the Court would have rejected it as without merit." *Keith*,

765 F. App'x at 529 (cleaned up).

The Court cannot discern any ineffectiveness, let alone of constitutional dimension, in appellate counsel's thorough presentation of Keith's ineffectiveness of counsel argument based on trial counsel's failure to move to suppress the NIT Warrant.  That the Second Circuit ultimately rejected this argument does not indicate otherwise.  It does, however, underscore that even if Keith could, *arguendo*, meet the first *Strickland* prong on this claim, he nevertheless cannot satisfy the second.  Even as the Second Circuit noted "the overwhelming authority rejecting such motions to suppress," in rejecting Keith's appeal, *Keith*, 765 F. App'x at 529, shortly thereafter, the Second Circuit joined this overwhelming authority and expressly held that "even assuming, *arguendo*, that the NIT warrant violated the Fourth Amendment, law enforcement officers acted in good faith and suppression is not warranted," rejecting the same arguments Keith says he would have raised in a suppression motion.  *United States v. Eldred*, 933 F.3d 110, 112 (2d Cir. 2019).  Accordingly, Keith cannot satisfy either *Strickland* prong on this claim.

     **c.**    **Ground Three**

Keith's third argument is that his trial counsel was constitutionally ineffective because he "did not challenge the 'particularity' requirement of the Residential Search Warrant."  Def.'s Mot. at 11.  Keith also appears to challenge the Premises Warrant as overbroad in that the supporting affidavit did not provide probable cause to search any devices other than "a specific computer with an[] electronic DNA Mac® address 9CB6544FADA."  *Id.* at 11–12.  In Keith's view, any reasonable counsel would have successfully moved to suppress the Premises Warrant on this basis and "Keith would not have taken a 2,016 month plea."  *Id.* at 17.

As an initial matter, this argument is foreclosed by Keith's guilty plea because "the fact that [Keith] pled guilty to the charges prevents consideration of a possible Fourth Amendment

violation because a knowing and intelligent guilty plea forecloses 'independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *Rosa v. United States*, 170 F. Supp. 2d 388, 409 (S.D.N.Y. 2001) (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *see Gregg*, 463 F.3d at 164 ("[A] petitioner may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt.").

Even if the Court were to liberally construe Keith's submissions in light of his *pro se* status as sufficiently "connecting the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct," such that Keith's argument "challeng[es] the attorney's *advice* about [his] bargaining position," and therefore survives the guilty plea, it would fail nevertheless. *Parisi*, 529 F.3d at 139.

Nooter, Keith's trial counsel, did move to suppress evidence stemming from the Premises Warrant, albeit on different grounds. Dkt. No. 21. Nooter attests that he

> decided not to raise certain arguments that [he] deemed frivolous (overbrea[d]th of the warrant, lack of specificity of the items to be seized) in favor on focusing on what [he] believed to be a much more meritorious issue . . . related to how the use of the information about the unsecured wireless signal emanating from the unsecured wireless router in Mr. KEITH's mother's apartment . . . could have been accessed by unknown persons outside of the apartment and, indeed, outside of the building . . . .

Nooter Decl. ¶ 12. The Court ultimately rejected this argument and denied the motion. *Keith*, 183 F. Supp. 3d at 429–31. But counsel's deliberate and considered decision not to advance the specificity and overbreadth arguments in his pretrial motion does not give rise to a viable claim of ineffective assistance, because "[c]ounsel need not pursue every possible argument, and may make reasonable decisions about which arguments present the strongest chance of success." *Santana v. Comm'r of Corr. Servs.*, No. 02-CV-3700 (GEL), 2003 WL 21459569, at *2 (S.D.N.Y. June 24, 2003) (Lynch, J.) (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). Indeed,

"[a]ctions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel."  *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009).

While "a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," *Mayo*, 13 F.3d at 533, Keith does not do so here.  Keith's opening brief does not acknowledge the suppression arguments his trial counsel did advance.  But substantially for the reasons stated by the Government, Gov't Opp'n at 22–24, a potential challenge to the Premises Warrant on overbreadth or particularity grounds would have—at the very least—faced formidable, if not insurmountable, hurdles.  Nooter's decision to focus his suppression arguments on different grounds "was reasonable under the circumstances of this case." *Weingarten v. United States*, 865 F.3d 48, 53 (2d Cir. 2017) ("Courts on collateral review may not second-guess reasonable professional judgments and impose on counsel a duty to raise every 'colorable' claim suggested by a client." (cleaned up)).

Keith's reply continues to raise particularity and overbreadth arguments—including by attaching and "incorporat[ing]" a third-party document outlining some of the relevant case law[7]—but, unlike his opening brief, does so exclusively with respect to the NIT Warrant.  *See, e.g.*, Def.'s Reply 2–3 ("[T]he overbreadth and lack of particularity of the NIT warrant was/is the prevailing and most likely to succeed argument governing Movant's Fourth Amendment claim.").  The Court previously held that these same arguments, even assuming they had merit, would nevertheless not warrant suppression in light of the good faith exception, and that Keith's counsel acted reasonably in declining to move to suppress on these grounds, *Keith*, 2017 WL

---

[7] Appendix B to Keith's Reply appears to be an excerpt from a 2017 joint publication by several non-profit organizations.  *See* Am. C.L. Union, Elec. Frontier Found. & Nat'l Ass'n of Crim. Def. Laws., Challenging Government Hacking in Criminal Cases (2017), https://www.aclu.org/sites/default/files/field_document/malware_guide_3-30-17-v2.pdf.

11681947, at *9–14, which the Second Circuit affirmed, *Keith*, 765 F. App'x at 529.[8]  Because "the Second Circuit addressed and rejected" this argument "on appeal," the mandate rule "bars the Court from granting habeas relief on this theory."  *United States v. Corley*, Nos. 13-CR-48 (AJN) et al., 2020 WL 4676650, at *10 (S.D.N.Y. Aug. 11, 2020); *accord Pitcher*, 559 F.3d at 123 ("It is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal." (internal quotation marks omitted)).

### d.   Ground Four

Keith next claims that "[t]here was no evidence presented to prove beyond a reasonable doubt that Mr. Keith's intent was to use a minor engaging in sexually explicit conduct for the purpose of producing any visual depiction," and that the "[d]e minimus work of counsel to present this argument to his client would have more than swayed [Keith's] decision and he would have gone to trial."  Def.'s Mot. at 18, 20.  The Government understands Keith to be arguing that "Nooter should have advised Keith to proceed to trial because the Government would have had to, but could not, prove that Keith intended to use a minor to produce pornography"—more specifically, that the Government was required to "prove that the defendant knew the victim was a minor."  Gov't Opp'n at 25.

"To secure a conviction under § 2251(a), the government must prove beyond a reasonable doubt that: (1) the victim was less than 18 years old; (2) the defendant used, employed, persuaded, induced, enticed, or coerced the minor to take part in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (3) the visual depiction was produced using materials that had been transported in interstate or foreign

---

[8] As noted above, the Second Circuit subsequently upheld, on a substantially similar basis, the denial of a motion to suppress the NIT Warrant.  *Eldred*, 933 F.3d 110.

commerce." *United States v. Broxmeyer*, 616 F.3d 120, 124 (2d Cir. 2010) (cleaned up).  As the Government notes, "§ 2251 does not contain a knowledge of age requirement."  *United States v. Griffith*, 284 F.3d 338, 349 (2d Cir. 2002).  Accordingly, to the extent Keith is now arguing that his attorney was constitutionally ineffective for failing to advise him to raise defenses related to knowledge of the victims' age, that argument is meritless.

However, the Court understands Keith, at least in part, to be making a somewhat different argument—that the Government was required to prove that the *purpose* of the sexual conduct Keith engaged in with the minor victims was to produce a visual depiction of that conduct; that there was insufficient evidence of that purpose; that Nooter should have advised Keith of a defense strategy based on this argument; and that had he done so, Keith would have gone to trial. Keith concedes in his motion that "[t]here were videos," "[t]here was evidence of a minor in the videos," and "[t]here was evidence of sexually explicit conduct."  Def.'s Mot. at 18.  But, Keith argues, "the statute only punishes the use of a minor specifically for the purpose of producing." *Id.* at 19; *see also, e.g.*, *id.* (citing Protecting Against Child Exploitation Act of 2017, H.R. 1761 115th Cong., which would have eliminated purpose requirement in § 2251).

Nooter's declaration declines to address this ineffective assistance argument "because, if there was any merit to the [intent] argument, [it] would have been raised at trial."  Nooter Decl. ¶ 34.  In any event, Nooter did not act unreasonably in declining to advise Keith about an argument along these lines in light of the evidence indicating that the purpose of Keith's sexual conduct with the minor victims was the production of visual depictions of that conduct.  *See United States v. Merrill*, 23 F.4th 766, 770 (7th Cir. 2022) (rejecting similar ineffective assistance argument following guilty plea to violation of 18 U.S.C. § 2251(a) because evidence "was sufficient to show that [the defendant's] purpose was, at least in part, to induce the

production of those images").  Indeed, Keith's motion does not really contend otherwise.  He notes that he "had a habit of video recording his numerous sexual encounters" and "enjoyed filming his encounters."  Def.'s Mot. at 18.  Yet this information only strengthens the inference that the purpose of Keith's sexual conduct with minors was to create visual depictions of those encounters.  Keith's own sentencing submission explains that he "desire[d] to be a 'pornographer,' but discover[ed] that there was no way for him to earn any money by doing that unless he ventured into the evil world of making pornography with minors," Dkt. No. 102 at 12, corroborated by recordings on his computers depicting him "having sex with a number of women under the pretense that he was involved in fashion and entertainment." PSR at 10, ¶ 23.  Keith testified at his allocution that "[o]n October . . . 12 and 13, I persuaded a female that I know was under 18 years of age to take -- produce videos of them, which I placed in the computer in the Bronx. . . .  [T]o take off their clothes and produce videos and put it on to my computer. . . . When I was recording them I actually persuaded her to take off her clothes and told her to get naked and videoed her genitals . . . with the phone."  Nov. 29, 2016 Tr. at 37–38.  On this record, Keith's counsel did not act unreasonably by not advising Keith to pursue an argument based on § 2251(a)'s purpose requirement, nor did Keith suffer any prejudice therefrom.

     **e.    Ground Five**

     Keith's fifth argument is that his "[c]ounsel was categorically ineffective in failing to challenge the Super[seding] Indictment," because the "indictment was facially deficient and failed to prevent Double Jeopardy and failed to adeqat[e]ly inform Mr. Keith of the nature of the specific events he had to defend" by omitting references to sufficiently specific methods and materials.  Def.'s Mot. at 21.  This argument is "foreclosed as a matter of law" by Keith's guilty plea, as it "relate[s] to events and matters that preceded his guilty plea" without "attack[ing] the

validity of his guilty plea or plea agreement." *Mejia v. United States*, Nos. 17-CV-4443 (JMF), 11-CR-483-1 (JMF), 2018 WL 6268219, at *2 (S.D.N.Y. Nov. 30, 2018); *see Parisi*, 529 F.3d at 138–39.

In any event, Keith's claim is meritless.  Under Rule 7 of the Federal Rules of Criminal Procedure, an indictment must contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  The indictment must be specific enough to inform the defendant of the charges and allow the defendant to plead double jeopardy in a later prosecution based on the same events.  *See United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992).  "Under this test, an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime."  *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975).

Here, the S2 Superseding Indictment sets out the elements of each charged crime and the facts supporting each element.  Indictment ¶¶ 1–6.  Keith's argument that the indictment needed "details of specific victims, specific images, specific materials used to produce, specific methods [and] interstate instrumentalities," Def.'s Mot. at 21, is contrary to law.  *See United States v. Miller*, 807 F. App'x 90, 93 (2d Cir. 2020) (summary order) ("'[T]he standard for the sufficiency of an indictment is not demanding,' and . . . indictments suffice even if they 'do little more than . . . track the language of the statute . . . .'" (quoting *United States v. Balde*, 943 F.3d 73, 89 (2d Cir. 2019))).  "The details are subject to proof at trial."  *United States v. Maxwell*, 534 F. Supp. 3d 299, 318 (S.D.N.Y. 2021).  Accordingly, Keith's counsel was not ineffective in failing to make this argument, nor did Keith suffer prejudice as a result.

f.    **Ground Six**

Keith next argues that "[t]here was no evidence that the actual alleged images were the actual images that a minor was used for producing"; rather, the "alleged images were copies and were not therefore the specific images encompassed in the context of 18 U.S.C. § 2251." Def.'s Mot. at 22.

This argument, too, is foreclosed by Keith's guilty plea as it concerns events pre-dating the plea and does not challenge the validity of the plea itself. *See United States v. Garcia*, 339 F.3d 116, 117 (2d Cir. 2003) (per curiam); *Mejia*, 2018 WL 6268219, at *2; *Keith*, 2017 WL 11681947, at *5. Even if it were not waived by Keith's plea, it would be barred by the procedural default rule, as Keith does not argue that he received ineffective assistance of counsel with respect to this argument; it was not raised on direct appeal; nor does he attempt to demonstrate any cause for failing the raise the claim on direct appeal nor prejudice from the alleged error. *Yick Man Mui*, 614 F.3d at 54.

In any event, the argument is also meritless. As the Government notes, it makes little sense on its own terms, as "the images in this case were digital images and the recordings recovered by the Government were the saved digital files created by Keith's phone." Gov't Opp'n at 28. Moreover, to obtain a conviction under 18 U.S.C. § 2251(a), there is no requirement that the Government identify "the initially produced images that Mr. K[ei]th was alleged to have used a minor engaged in sexually explicit [conduct] for the purpose of producing," Def.'s Mot. at 22, or to otherwise provide an original version of any recording of Mr. Keith's conduct. *See, e.g.*, *United States v. Asmodeo*, 763 F. App'x 75, 76–77 (2d Cir. 2019) (summary order) (affirming denial of motion to suppress "copy" of video on CD depicting

defendant having sex with minor in § 2251(a) prosecution).  Accordingly, Ground Six provides no basis for relief.

>    g.    **Ground Seven**

Keith next argues that his "[c]ounsel was ineffective for failing to challenge the subject-matter jurisdiction of § 2251" because "[a]s written and ratified 18 U.S.C. § 2251 currently does [not] prohibit the actual production of child pornography," but rather "regulates the use, [etc.], of any minor with the intent that such minor engage in sexually explicit activity 'for the purpose of producing any visual depiction.'"  Def.'s Mot. at 23–24.

Once again, this argument is foreclosed by Keith's guilty plea as it concerns Nooter's performance prior to the plea and does not challenge the validity of the plea itself.  *See Garcia*, 339 F.3d at 117; *Mejia*, 2018 WL 6268219, at *2; *Keith*, 2017 WL 11681947, at *5.

Even if it were not waived, the argument is meritless.  The Second Circuit has previously held that "§ 2251(a) lies within Congress's powers under the Commerce Clause."  *United States v. Holston*, 343 F.3d 83, 91 (2d Cir. 2003).  And even accepting *arguendo* Keith's distinction between the "actual product[ion] of child porno[graphy]," Def.'s Mot. at 23—which Keith concedes is within Congress's Commerce Clause power to regulate—and the "use[]" of "any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct," 18 U.S.C. § 2251(a), here Keith *did* actually produce sexually explicit videos of minors, Nov. 29, 2016 Tr. at 37–39, and so cannot argue that the statute is unconstitutional as applied to him, *United States v. Robbins*, 729 F.3d 131, 132 (2d Cir. 2013).  Accordingly, Nooter did not act unreasonably in declining to make this argument, nor was Keith prejudiced thereby.

### h.   Ground Eight

Similarly, Keith argues that the "jurisdictional hook" in § 2251(a)—"that [the] visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce by any means," 18 U.S.C. § 2251(a)— is insufficient to bring the statute within Congress's Commerce Clause power.  Def.'s Mot. at 27–31.  Keith claims that competent counsel "would have discovered there was no 'knowing or reason to know' that the Flashdrive videos would be in commerce"; "would have discovered the Flashdrive videos did not enter interstate Commerce"; "would have challenged that the Flashdrive is not itself [child pornography]"; and that "Mr. Keith would not have accepted a plea had this challenge been presented."  *Id.* at 30–31.

This argument, too, is meritless.  Nooter explains in his declaration that "[t]he failure to challenge the interstate element of the crimes . . . was no failure because had I chosen, as a strategic matter, to raise that issue it would have been at trial."  Nooter Decl. ¶ 34.  Moreover, Keith's argument is foreclosed by Second Circuit precedent.

> Because much of the child pornography that concerned Congress is homegrown, untraceable, and enters the national market surreptitiously, . . . Congress, in an attempt to halt interstate trafficking, can prohibit local production that feeds the national market and stimulates demand, as this production substantially affects interstate commerce. Accordingly, . . . insofar as § 2251(a) prohibits the production of child pornography using materials that have moved in interstate commerce, it is a permissible exercise of Congress's authority under the Commerce Clause.

*Holston*, 343 F.3d at 90.

Accordingly, Nooter did not act unreasonably in failing to advance this argument prior to Keith's plea, nor was Keith prejudiced thereby.

### i.     Ground Nine

As his ninth ground for relief, Keith claims that Nooter coerced him into pleading guilty through a variety of alleged failures.  In particular, Keith alleges that Nooter had promised him "a 15–24 year sentence" and also failed on a variety of fronts to conduct a reasonable factual investigation.  Def.'s Mot. at 32–33.

As discussed above, the Court need not credit Keith's current claim that Nooter promised him a specific sentence, as it is contradicted both by Nooter's sworn declaration and Keith's own sworn statements at his plea hearing.  *See Hernandez*, 242 F.3d at 112; *Rivernider*, 828 F.3d at 105; *Naranjo*, 2021 WL 1063442, at *6; *Stitsky*, 2018 WL 10741470, at *6.

To the extent Keith raises arguments with respect to the effectiveness of Nooter's investigation, they are foreclosed by Keith's guilty plea, which "conclusively establishes the factual predicate for the offense to which the defendant is pleading guilty"; accordingly, "on collateral attack of a judgment of conviction," Keith "may not assert pre-plea constitutional violations bearing on the valid establishment of his factual guilt."  *Gregg*, 463 F.3d at 164; *Mejia*, 2018 WL 6268219, at *2.  Moreover, "the petition does not suggest that any further investigation would have produced evidence exculpating" Keith of the crimes to which he admitted.  *Francisco v. United States*, Nos. 16-CV-1073 (DLC), 13-CR-217-2 (DLC), 2016 WL 4257522, at *3 (S.D.N.Y. Aug. 9, 2016).

Finally, Keith also claims that Nooter inadequately explained the nature of the charges and potential resulting consequences.  Def.'s Mot. at 33.  Nooter, however, disputes this claim in his declaration, Nooter Decl. ¶ 26, and, in any event, at Keith's plea colloquy, the Court ensured that Keith was competent to plead, that he understood his rights, and that he understood the terms of the plea agreement, including the nature of the charges and the consequences of pleading

guilty, Nov. 29, 2016 Tr. at 1–34.  Accordingly, Keith fails to demonstrate entitlement to any

relief under Ground Nine.

### j.    Ground Ten

Keith next argues that 18 U.S.C. § 3583 requires that a term of supervised release be

counted against the term of imprisonment, such that the combined terms of imprisonment and of

supervised release cannot exceed the statutory maximum sentence for the underlying crime of

conviction, and that both his trial and appellate counsel were constitutionally ineffective in not

pursuing this argument.  Def.'s Mot. at 34–37.  Because Keith was sentenced to the statutory

maximum term of imprisonment of 168 years as well as a (theoretically longer) lifetime term of

supervised release, Keith claims that he is "required by law" to be released on "lifetime

supervised release . . . subject to the unserved portion of his 168 years for any violation."  *Id.* at

36.

However, Keith's argument is foreclosed by Second Circuit precedent.  "[T]he maximum

term of imprisonment that the defendant can face for [a] conviction is the maximum term of

imprisonment for the underlying crime *plus* the maximum term of his supervised release

authorized by statute for the underlying offense . . . ."  *United States v. Peguero*, 34 F.4th 143,

160 (2d Cir. 2022); *see United States v. Pettus*, 303 F.3d 480, 487 (2d Cir. 2002) (Sotomayor, J.)

("[It is] well-settled . . . that punishment for a violation of supervised release, when combined

with punishment for the original offense, may exceed the statutory maximum for the underlying

substantive offense." (cleaned up)).  Accordingly, neither trial nor appellate counsel acted

unreasonably in declining to make this argument, nor did Keith suffer any resulting prejudice.

###### k.    Ground Eleven

Next, Keith argues that trial counsel "was ineffective when he failed to advise and inform" Keith that the indictment included aiding and abetting charges under 18 U.S.C. § 2. Def.'s Mot. at 38.  Keith now claims that the inclusion of such charges means that "the Government clearly believes that there was/is another party involved in creating these videos," and that because "the Government never narrated how or who Mr. Keith aided & abetted," he likely would have been acquitted at trial.  *Id.* at 40.

For his part, Nooter does not recall discussing the aiding and abetting charges.  Nooter Decl. ¶ 27.  But whether or not Nooter did discuss this issue with Keith does not bear on whether he acted unreasonably in the circumstances of this case.  "It is not uncommon to charge aiding and abetting and principal liability as alternative theories."  *United States v. Ulbricht*, No. 14-CR-68 (KBF), 2014 WL 5410049, at *4 (S.D.N.Y. Oct. 24, 2014) (collecting cases).  And "[i]t is settled in this Circuit that a defendant may be convicted of aiding and abetting upon proof that he is the principal."  *United States v. Dupont*, 112 F.3d 506, 1996 WL 599800, at *2 (2d Cir. Oct. 18, 1996) (unpublished table decision); *see United States v. Knoll*, 16 F.3d 1313, 1323 (2d Cir. 1994).

Here, as Nooter explains, "there was never any evidence in the discovery or the investigation that suggested that there was another perpetrator assisting Mr. KEITH in committing the crimes."  Nooter Decl. ¶ 27.  And the Government's theory as the case proceeded to trial was that Keith himself committed the crimes of conviction.  Gov't Opp'n at 34.  Indeed,

Keith's own allocution established that he committed the crimes of conviction acting as the principal, without any accomplice.  *See* Nov. 29, 2016 Tr. at 37–43.[9]

It follows that, because the reference to an aiding and abetting charge under 18 U.S.C. § 2 in the indictment had no practical relevance to Keith's defense as the prosecution developed, any failure by Nooter to discuss the issue with Keith was not unreasonable, nor did it prejudice Keith in any way.[10]

### l.    Ground Twelve

As his twelfth ground for relief, Keith argues that Nooter acted unreasonably in advising Keith to participate in an innocence proffer with the Government.  Def.'s Mot. at 42–44.  Keith further claims that Nooter scheduled the proffer without notifying Keith and failed to explain the nature of the proffer to Keith.  *Id.* at 42.  Keith claims that the proffer "box[ed] hi[m] . . . into a guilty plea."  *Id.* at 44.

Once again, this argument is foreclosed by Keith's guilty plea, because "[a] defendant may not challenge the voluntariness of a plea on the grounds that a non-jurisdictional constitutional violation — including counsel's purported ineffectiveness — occurred at some time prior to plea negotiations and placed a defendant in a worse bargaining position."  *Keith*, 2017 WL 11681947, at *5.

In any event, the claim is meritless.  According to Nooter, Keith's contention that he failed to notify Keith of the proffer or discuss what it meant with him is "simply false"; rather, Nooter "discussed the idea at length with Mr. KEITH and repeatedly told him that this would go

---

[9] The PSR similarly makes clear that Keith acted as a principal with respect to the relevant criminal activity.  *See* PSR ¶¶ 23–26.

[10] For substantially the same reasons, Keith's Rule 36 motion to amend the judgment to correct a purported clerical error by adding references to 18 U.S.C. § 2 is denied.  Dkt. No. 127.  No error exists because Keith was convicted as a principal.

horribly wrong if he were lying."  Nooter Decl. ¶ 28; *see id.* ¶¶ 13–14.  Nooter attests that it was *Keith* who "insisted that he wanted to try the innocence proffer."  *Id.* ¶ 13.

The Court need not credit Keith's account in light of Nooter's contrary sworn statements. *See Zubiate*, 2022 WL 1294437, at *4.  But even if Nooter did fail to adequately explain the proffer to Keith, Keith would be unable to demonstrate prejudice because he reviewed and signed a written agreement "which stated in clear terms that anything Mr. KEITH said during the proffer could be used against him at trial."  Nooter Decl. ¶ 14.  Thus, regardless of Nooter's advice, Keith "cannot claim that he was unaware of the consequences of making false statements . . . during the proffer session."  *FNU LNU v. United States*, Nos. 12-CV-7897 (RJS), 09-CR-543 (RJS), 2015 WL 5893723, at *10 (S.D.N.Y. Oct. 7, 2015) (Sullivan, J.).

As for Nooter's advice to participate in the innocence proffer, although the gambit ultimately backfired, the Court cannot find that Nooter's counsel was constitutionally ineffective. At the time, Keith was still insisting to Nooter that "he was not the person in the video recordings" relevant to Counts One and Two and that he had an alibi, claiming that he was in Atlanta at the time of the recordings.  Nooter Decl. ¶ 8.  Nooter was in the process of corroborating Keith's story through an investigator, and, while Nooter had some concerns, enough details had checked out that Nooter was comfortable moving forward with the proffer, particularly given that Keith "repeatedly insisted that he was telling the truth."  *Id.* ¶ 28; *see id.* ¶¶ 9–11.  Nooter reasoned that Keith's alibi, if accepted, could allow Keith to come to a more favorable plea agreement and potentially cooperate with the government, and that the proffer would allow for an opportunity to test the strength of the alibi defense prior to trial.  *Id.* ¶ 13.

"In assessing the reasonableness of a lawyer's advice regarding whether a defendant should attend a proffer session with the government, a court should consider whether the

decision to meet with the government was strategic.  A strategic decision is a conscious, reasonably informed decision made by an attorney with an eye to benefitting his client." *FNU LNU*, 2015 WL 5893723, at *7 (cleaned up).  Nooter's recommendation to participate in the proffer was precisely such a "strategic decision" that was "not unreasonable." *Cohen v. United States*, Nos. 07-CV-7397 (GBD), 01-CR-1208 (GBD), 2013 WL 5882923, at *4 (S.D.N.Y. Oct. 29, 2013) (rejecting ineffective assistance claim based on advice to attend proffer session).

Moreover, "it is not ineffective counsel to rely on defendant's apparently truthful statements when determining trial strategy." *United States v. Pitcher*, 7 F. App'x 119, 121 (2d Cir. 2001).  Thus, "[a]dvising a defendant to convey exculpatory information to the [Government], whi[c]h later turns out to be false, does not constitute deficient performance." *Reich v. United States*, No. 07-CV-2406 (NGG), 2010 WL 10373, at *4 (E.D.N.Y. Jan. 4, 2010) (citing *Still v. Lockhart*, 915 F.2d 342, 344 (8th Cir. 1990) (per curiam)).  Here, "[a]ny deficiency in counsel's advice on this subject is properly attributable to [Keith's] own dishonesty in dealing with his lawyer." *Pitcher*, 7 F. App'x at 120–21.  Although Keith ultimately exposed himself to additional criminal liability by repeating his false statements to the Government during the proffer, the strategic decision to participate in the proffer cannot "be judged by hindsight." *United States v. Monzon*, 359 F.3d 110, 120 (2d Cir. 2004).  Accordingly, Nooter's "belief in [Keith's] lies did not constitute constitutionally ineffective assistance" nor was his performance "below prevailing professional standards." *Id.*

### m.   Ground Thirteen

Keith next argues that his Sixth Amendment right to effective assistance of counsel was violated because he did not have access to an equal number of lawyers or investigators "of similar skill and of similar power" as the Government did.  Def.'s Mot. at 45–46.  However, the

Constitution guarantees no such right.  The Sixth Amendment "guarantees defendants in criminal cases the right to adequate representation, but . . . '[a] defendant may not insist on representation by an attorney he cannot afford.'"  *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989) (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)).  Adequate representation does not mandate an absolute equality of resources; indeed, effective counsel are expected "to balance limited resources in accord with effective trial tactics and strategies."  *Harrington v. Richter*, 562 U.S. 86, 107 (2011).  It follows that, to the extent Keith contends his appellate counsel was ineffective in failing to make this argument on appeal, Def.'s Mot. at 45, that argument fails as well.

### n.  Ground Fourteen

Keith next argues that Nooter "act[ed] with deception" in connection with certain DNA test results, which coerced him into pleading guilty.  Def.'s Mot. at 47.  Keith does not articulate what Nooter told him about the results, except that Nooter advised him that he "needed to plead guilty to avoid trial with a DNA expert from the Government testifying."  *Id.*  Keith's claims are unsupported by the record and the Court does not credit them.  *See, e.g.*, *Stitsky*, 2018 WL 10741470, at *6 (rejecting without evidentiary hearing "self-serving allegations" by § 2255 petitioner "that are contradicted by a credible affirmation from a trial attorney" (cleaned up)).

In his declaration, Nooter explains that Keith appears to be conflating two separate sets of DNA comparisons: (1) one taken from the phone which was used to make one of the video recordings as well as from clothing of one of the victims, which showed no match; and (2) from samples stemming from an investigation of a rape complaint by New York law enforcement authorities in 2008, which did show a match, but from a complainant Keith says was his then-girlfriend.  Nooter Decl. ¶¶ 30–31.  Nooter denies withholding any information about the DNA

comparisons and explains that neither played any meaningful role in the decision of whether or not to plead guilty.  *Id.* ¶¶ 30–32.  The Government sought to introduce expert testimony with respect to the former, in order to explain how a negative match result could occur; Nooter explains that he had no reason to object, as he would have sought to introduce the exculpatory result in the event of trial, and accordingly did not, and would not have, advised Keith to avoid trial on this basis.  *Id.* ¶ 30.  As for the latter, if the Government did seek to introduce such evidence, Keith would have been free to proffer his explanation that the complainant was his girlfriend.  *Id.* ¶ 31.

Nor did Keith raise this allegation when moving to withdraw his guilty plea, or on direct appeal of the Court's denial of that motion, despite basing his arguments on Nooter's alleged ineffectiveness.  Indeed, although the Court appointed independent counsel to advise Keith regarding a potential plea withdrawal motion, Keith's relationship with Nooter at the time remained relatively strong and Keith had indicated a desire to continue being represented by him. May 25, 2017 Tr. at 3.  Moreover, as the Court noted at sentencing,

> Throughout [Keith's] criminal conduct and throughout even this proceeding, his interaction with the federal justice system in this case, he has consistently shown that he's willing to lie, manipulate, and be deceptive in order to get what he wants from forgery to the way in which he lured and manipulated his victims, to part of this very prosecution when faced with these very serious charges, he spent hours lying to the government, sending the government around the country looking for witnesses to prove that what he was saying was false.

Sept. 5, 2017 Tr. at 16.

"[I]t is . . . well settled that district courts need not accept the uncorroborated statements of a criminal defendant at face value," *Samet v. United States*, 559 F. App'x 47, 49 (2d Cir. 2014) (summary order), and for the foregoing reasons, the Court declines to do so here. Accordingly, Ground Fourteen provides no basis for relief.

### o.    Ground Fifteen

In his final ground for relief, Keith seeks a declaration that the Court lacks subject-matter jurisdiction to adjudicate most of his claims and that Section 2255's remedies are inadequate to remedy "conviction related issues." Def.'s Mot. at 60. Keith argues that because the statute refers to "sentences" rather than "convictions," motions pursuant to Section 2255 can address only errors related to sentencing, rather than challenges to the validity of the conviction itself. *Id.* at 55–59.

Keith's argument is meritless. "A criminal defendant can challenge his *conviction* . . . by collateral attack, seeking a writ of habeas corpus from the federal district court under 28 U.S.C. § 2255." *United States v. Vilar*, 645 F.3d 543, 546 (2d Cir. 2011) (per curiam) (emphasis added); *see Wall v. United States*, 619 F.3d 152, 155 (2d Cir. 2010) (per curiam) (explaining "the explicit purpose of § 2255" is to allow a defendant to "lodge a true collateral attack on his *conviction* and sentence" (cleaned up) (emphasis added)). Section "2255 was intended to substitute a" particular forum and "procedure for collateral review of federal convictions," *Swain v. Pressley*, 430 U.S. 372, 378 (1977), but "can perform the full service of habeas corpus, by effecting the immediate and unconditional discharge of the prisoner," *Andrews v. United States*, 373 U.S. 334, 339 (1963). Thus, Keith's textual argument is foreclosed by precedent. *See, e.g.*, *Davis v. United States*, 417 U.S. 333, 343–44 (1974) (acknowledging that while "the statutory language is somewhat lacking in precision," the "history makes clear that § 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus," including "prisoners' rights of collateral attack upon their convictions"); *United States v. Loumoli*, 13 F.4th 1006, 1010 (10th Cir. 2021) (explaining that "a defendant can collaterally challenge his conviction under § 2255 even though the text of the statute only references sentencing

challenges" while acknowledging that "convictions" and "sentences" are distinct concepts); *Guerrero v. United States*, Nos. 1:15-CV-7282 (GHW), 1:07-CR-248 (GHW), 2017 WL 1435743, at *4 (S.D.N.Y. Apr. 20, 2017) ("Although § 2255, by its terms, provides grounds for attacking 'the sentence,' the term 'sentence' has been interpreted as a generic term encompassing all of the proceedings leading up to the sentence, including the conviction.").  "As [Keith] here attacks his conviction . . . on the grounds that his guilty plea was not knowing and intelligent and that his admissions did not constitute a crime, his petition . . . is precisely the sort of application that generally must be made to the sentencing court by motion under Section 2255."  *Bellomo v. United States*, 344 F. Supp. 2d 429, 434 (S.D.N.Y. 2004).

## CONCLUSION

For the foregoing reasons, the Court DENIES Keith's motion to vacate under 28 U.S.C. § 2255.

No evidentiary hearing is necessary because the files and records of the case conclusively show that Keith is not entitled to relief.  28 U.S.C. § 2255(b); *see Puglisi v. United States*, 586 F.3d 209, 213 14 (2d Cir. 2009); *Williams v. United States*, Nos. 21-CV-6624 (NSR), 17-CR-506-2 (NSR), 2022 WL 685497, at *4 (S.D.N.Y. Mar. 8, 2022).  Because Keith has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253.  Additionally, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438, 444 45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).  Accordingly, *in forma pauperis* status is denied.

The Clerk of Court is respectfully directed to terminate 18-CR-442, Dkt. Nos. 40,[11] 127,

128, 129, and 134[12]; to close Case No. 20-CV-4410; and to mail a copy of this Memorandum

Opinion & Order to Keith at the address listed on the docket and copied below.

> David Keith
> Reg. No. 06236043
> U.S.P. Tucson
> P.O. Box 24550
> Tucson, AZ 85734-4550

SO ORDERED.

Dated: July 8, 2022
      New York, New York

_____
    ALISON J. NATHAN
United States Circuit Judge,
sitting by designation

---

[11] The Government's May 2, 2016 motion in limine, Dkt. No. 40, was rendered moot by Keith's guilty plea, but erroneously remains open on the docket.

[12] The Government's July 28, 2020 motion seeking an affidavit from Keith's counsel, Dkt. No. 134, was resolved by the Court's August 5, 2020 order, Dkt. No. 135, but erroneously remains open on the docket.